# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FELICITA VALDEZ and SADIE MOYA,
on behalf of themselves
and all others similarly situated,

      Plaintiffs,

vs.                                        Civ. No. 00-121  JC/WWD

WACKENHUT CORRECTIONS
CORPORATION, a Foreign Corporation;
JOSEPH WILLIAMS, ERASMO BRAVO;
CORRECTIONS CORPORATION OF
AMERICA, a Foreign Corporation; WILLIAM
SNODGRASS; DONALD DORSEY; THOMAS
NEWTON; CORNELL CORRECTIONS OF
TEXAS, Inc., a Foreign Corporation; LAWRENCE
BARRERAS; CORRECTIONAL SERVICES
CORPORATION; a Foreign Corporation;
ROBERT BASS, EVERCOM SYSTEMS, INC.,
a Foreign Corporation; PCS AMERICA, INC.,
a Foreign Corporation; AND JOHN DOES I-X,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the court on Plaintiffs' Motion to Remand and Request for Attorney's Fees, filed June 16, 2000 *(Doc. 47)*.  I have reviewed the Motion, the memoranda and exhibits submitted by the parties and the relevant authorities.  I find that Plaintiffs' motion to remand is well taken and will be granted.  Plaintiffs' motion for attorneys' fees is not well taken and will be denied.

## BACKGROUND

Plaintiffs Felicita Valdez and Sadie Moya brought suit in the First Judicial District of New Mexico State Court for claims involving collect phone calls received from inmates housed at Defendants' facilities. Each jail facility tightly regulates inmate calls. Pursuant to these regulations, inmates may not receive outside calls. However, the inmates may place collect calls through a telephone company provider chosen by the facility. Inmates have no choice of service carrier or calling options. In their suit, Plaintiffs allege that the operators of the correctional facilities have entered into exclusive dealing agreements with telephone service providers which prohibit the inmates or their families from utilizing available lower-cost options such as "dial-around" service or debit cards. Plaintiffs further allege that these arrangements have resulted in large "commissions" or "kickbacks" to be paid by the service provider to the correctional facility defendants and to the wardens that administer each facility. Accordingly, Plaintiffs challenge the agreements as violations of the New Mexico Unfair Trade Practices Act, the New Mexico Antitrust Act and the New Mexico Racketeering Act. Plaintiffs also advance claims of unjust enrichment, economic compulsion and constructive fraud. Plaintiffs seek money damages as well as injunctive relief for themselves and their putative class of like Plaintiffs.

The Wackenhut Defendants removed the action to this court pursuant to 28 U.S.C § 1441(b), which permits removal of "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C § 1441(b). Defendants assert federal jurisdiction over this matter based on diversity jurisdiction, or in the alternative, federal question jurisdiction. To support diversity jurisdiction Defendants argue that the warden defendants have been fraudulently joined to defeat diversity and

2

that the amount in controversy required for diversity jurisdiction is otherwise met.  To support federal question jurisdiction,  Defendants argue that Plaintiffs' claims arise under federal law even though they purport to be based on state law because the claims are completely preempted by the Federal Communications Act, 47 U.S.C. §151 *et seq.* (FCA).  Plaintiffs now move to remand and for attorneys' fees associated with their motion.

## ANALYSIS

**I.     Motion to Remand**

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so.  *See Laughlin v. Kmart Corp.*, 50 F. 3d 871, 873 (10th Cir. 1995)("[T] here is a presumption against removal jurisdiction").  Removal statutes are to be strictly construed, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U. S. 100, 108 (1941) and all doubts are to be resolved against removal. *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 65 (10th Cir. 1957).  Where a plaintiff has brought suit in state court, and defendant seeks to remove, the burden is on the defendant to show that there is jurisdiction in the federal court.  *See Penteco Corp. v. Union Gas System, Inc.*, 929 F. 2d 1519, 1521 (10th Cir. 1991).  For the reasons set forth below, I reject Defendants asserted basis for removal jurisdiction and remand the complaint to state court.

**A.     Diversity Jurisdiction**

Defendants first allege that the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Defendants first argue that the value of the aggregate harm is greater than $75,000. Second, Defendants argue that the Warden Defendants are fraudulently joined and, therefore, their inclusion does not act to defeat diversity.

It is uncontested that the named Plaintiffs seek only minor monetary damages.  Plaintiff

Valdez and Plaintiff Moya state that they have suffered no more than $600 and $1000 damages in the last year. Defendants concede that there is no reason to think any other plaintiff will seek to recover a greater amount. Under the historical interpretation of § 1332, any plaintiff in a diversity class action--whether class representative or putative class member--who does not meet the jurisdictional amount in controversy must be dismissed from the action, and if no plaintiff can meet the amount in controversy, the entire class action must be dismissed. *See Zahn v. International Paper Co.*, 414 U.S. 291, 300 (1973).

Defendants argue that the jurisdictional requirement is met based on the amount of Plaintiffs' claim for injunctive relief as valued by the resultant burden Defendants would suffer if Plaintiffs prevail. Indeed, the Tenth Circuit has held that a court may properly examine the value of the suit to the Plaintiffs as the potential damage or cost to the defendant. *Okla. Retail Grocers v. Wal-Mart Stores*, 605 F.2d 1155, 1160 (10th Cir. 1979)(citing *Ronzio v. Denver & R. G. W. R. Co.*, 116 F.2d 604 (10th Cir. 1940)(where judgment in favor of the plaintiffs result in pecuniary loss to defendant, requisite jurisdictional amount was met)). However, although recently cited in *Justice v. Atchinson, Topeka & Santa Fe Railway Co.*, 927 F.2d 503 (10th Cir. 1991), the holding in *Oklahoma Retail Grocers* has experienced limited acceptance in the district courts. Specifically, the district courts have rejected the expansive reading urged by Defendants which would allow potential pecuniary loss to be attributed to each putative class member, *see e.g., Amundson & Assoc. Art Studio, Ltd. v. National Council on Coop. Ins.*, 977 F.Supp 1116, 1125 (D. Kan. 1997), in favor of the view that aggregation of the costs of complying with injunctive relief is allowed only where the plaintiffs seek to enforce a common and undivided interest, such as the alteration of a bridge. *See id.* at 1124.

To establish a common and undivided interest, Defendants must show that the claims of the

putative class members derive from rights which they hold in group status.  *See Amundson*, 977 F.Supp at 1125 (citing *Potrero Hill Community Action Comm. v. Housing Auth. of San Francisco*, 410 F.2d 974, 978 (9th Cir.1969)). Even if plaintiffs' claims present common questions of law and fact, as they must if they are to be certified as a class, it does not necessarily mean that their rights are held in group status. *See United States v. Southern Pac. Transp. Co.*, 543 F.2d 676, 683 (9th Cir.1976). In other words, a class has a common and undivided interest "where only the class as a whole is entitled to the relief requested."*Amundson* 977 F.Supp at 1124.

In this case, Plaintiffs do not have a "common and undivided interest" in their claim for injunctive relief. The rights which Plaintiffs seek to enforce are individual rather than collective in nature. Plaintiffs did not possess rights in common before they filed suit, and they could have sued individually to secure the injunctive relief which they request. Although the class action device permits them to combine their claims for convenience and economy, neither that form of action nor the nature of the injunctive relief which they seek permits aggregation. The law is well settled that separate claims may not be aggregated in order to attain the monetary level necessary for federal jurisdiction. *See Snyder v. Harris*, 394 U.S. 332, 339 (1969).

Therefore, even if the amount in controversy may be valued as the cost of injunctive relief, the cost of injunctive relief must be prorated among Plaintiffs and the innumerous members of the putative class. *See Asten v. Southwestern Bell Telephone Co.*, 914 F.Supp. 430, 433-34 (D.Kan.,1996); *Copeland v. MBNA America, N.A.*, 820 F.Supp. 537, 541 (D.Colo.1993). In this case, though no specific amount was given for the potential cost of compliance, certainly the *pro rata* amount for each class member would not be greater than $75,000. Defendants have not shown that the amount in controversy requirement has been met by each Plaintiff. Therefore, the court may not

exercise diversity jurisdiction.[1]

### B.   Federal Question Jurisdiction

Absent diversity jurisdiction, federal question jurisdiction is required. *See* 28 U.S.C § 1331. The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Burda v. M. Ecker Company*, 954 F. 2d 434, 438 (7th Cir. 1992). Thus, a plaintiff is the "master of his claim" and may prevent removal by choosing not to plead a federal claim even if one is available. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Schmeling v. NORDAM*, 97 F. 3d1336, 1339 (10th Cir. 1996).

As a corollary to the well-pleaded complaint rule, the artful pleading doctrine provides that a plaintiff may not avoid federal question jurisdiction (and thereby defeat removal) by omitting to plead necessary federal questions in its complaint. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983). To prevent artful pleading, a federal court may look beneath the face of a complaint and treat a disguised claim as one arising under federal law, notwithstanding a plaintiff's characterization of the claim in terms of state law. *See Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2 (1981).  One such instance occurs when Congress so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 389 (1987).  Coined the "complete preemption doctrine," the doctrine permits federal question jurisdiction over complaints that, although not presenting federal questions on their face, present state law claims that are

---

[1]Because I find that the requisite amount in controversy is not met, the court need not address whether the individual warden defendants were fraudulently joined to defeat diversity.

preempted by federal law. *See Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996)(holding that "complete preemption" is a term of art describing the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal).

In this case, Plaintiffs have specifically avoided pleading any federal claims, relying solely on state law. Nevertheless, Defendants contend that, despite the nature of Plaintiffs' Complaint, Plaintiffs' allegations essentially challenge the rates contained in Federal Communications Commissions (FCC) approved tariffs which class members must pay when they accept collect calls from incarcerated callers.[2] Accordingly, Defendants argue that Plaintiffs' claims are subject to complete preemption under the Federal Communications Act (FCA) which provides a parallel federal cause of action for claims attacking FCC-approved rates. *See e.g., Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998)(because a tariff filed with a federal agency is the equivalent of a federal regulation, a suit to enforce or challenge the validity of a tariff arises under federal law).

In order to qualify for complete preemption, federal law must not only preempt state law, but also provide a substitute federal cause of action thereby manifesting Congress's intent to permit removal. *See NORDHAM* at 1342. Thus, the appropriate inquiry in evaluating Defendants' complete preemption claim is whether Congress, in enacting the FCA, demonstrated a clear intention to create

---

[2]Although Plaintiffs' Motion to Remand forgoes any claims based on interstate telephone calls, thereby limiting the Complaint to intrastate calls not regulated by the FCC, Plaintiffs' Complaint clearly extends to inmate collect calls received by citizens throughout the nation. Plaintiffs may not amend or limit their complaint after removal in order to disavow federal jurisdiction. *See Ching v. Mitre Corp.*, 921 F.2d 11, 13 (1st Cir. 1990); *Williams -Ward v. Lorenzo Pitts, Inc.*, 908 F. Supp 48, 52 (D. Mass 1995)*; Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.*, 605 F.2d 119, 123 (3d Cir. 1979). Therefore, the court bases its jurisdictional analysis on the original Complaint.

removal jurisdiction over claims such as those here. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1987)("the touchstone of the federal district court's removal jurisdiction is ... the intent of Congress.")

Defendants argue that the comprehensive nature of the regulatory scheme created under the FCA clearly indicates Congressional intent to preempt all claims involving the FCC. Specifically, section 203 of the FCA requires all common carriers of interstate and foreign telecommunications to file a schedule of their charges, as well as any classifications, practices, and regulations affecting such charges. *See* 47 U.S.C. §203. A common carrier may only charge the rates listed in the schedule, otherwise known as a tariff. *See id.* at §203 (c)(1). Under the filed rate doctrine, a customer or competitor must challenge the rates before the agency itself, prior to seeking judicial review. *See Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001). A plaintiff may not ask a court to invalidate or modify the tariff, or determine the lawfulness of the tariff, in any other type of suit, such as a civil rights suit or an antitrust suit. *See id.* Defendants contend that is exactly what Plaintiffs' Complaint proposes.

Plaintiffs, on the other hand, deny that they are challenging the tariffs. Instead, Plaintiffs assert claims challenging the correctional facilities' unlawful grant of exclusive rights to certain telephone companies in exchange for commissions or kickbacks. Plaintiffs argue that they do not oppose the filed rates *per se*, but that the Defendants have unlawfully chosen to contract with the telephone company which provides the greatest kickback to the facility. Thus, Plaintiffs seek to dissolve the underlying service agreements, regardless of the rates filed with the FCA, based on the commissions granted the correctional facilities. Plaintiffs chosen grounds for challenging these agreements are based on state law prohibiting exclusive agreements which violate unfair trade

8

practice and antitrust laws.

Circumstances where federal law completely preempts state law are extremely rare.  In fact, the cases reveal that although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the limited scope in which it has thus far been applied.  Specifically, the Supreme Court has only approved the use of complete preemption in three areas: (1) claims under the Labor Management Relations Act by a labor union against an employer under a collective bargaining agreement, *see Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 561-62 (1968), but not claims arising from individual employment contracts, *see Caterpillar*, 482 U.S. at 398-99; (2) Employment Retirement and Insurance Security Act ("ERISA") suits by a beneficiary, s*ee Metropolitan Life*, 481 U.S. at 66-67, but not suits by a state against an ERISA plan, *see Franchise Tax Bd.*, 463 U.S. 1, 25-26 (1983); and (3) certain Indian land grant rights, *see Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666-67 (1974).  As discussed above, Plaintiffs challenge the service provider agreements, not the rates filed under the FCA. Likened to complete preemption in the Labor Management arena, where challenges arising from individual contracts are not preempted by the LMRA, it is clear that this is not a case in which to extend the scope of the complete preemption doctrine.[3]

_____

[3]Complete preemption is to be distinguished from ordinary preemption. Ordinary preemption is a defense that may be raised in state court, but is not a proper basis for removal. *See Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir.1996) (distinguishing between "complete preemption" and "ordinary preemption").  Nothing in this opinion precludes Defendants from raising the preemptive effect, if any, of the FCC's orders or the Communications Act in defense of Plaintiffs' claims. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 & 816, n. 14 (1996)(proper interpretation of federal statutory law in the course of state litigation is protected by the Supreme Court's power to ultimately review state court decisions, and is therefore insufficient to confer federal jurisdiction); *see also Metropolitan Life*

Defendants have further failed to demonstrate that absent complete preemption under the FCA, the artful pleading doctrine provides any basis for federal subject matter jurisdiction over Plaintiffs' claims.  Whether or not the correctional facilities violated state antitrust and unfair trade practice laws by electing to contract with the telephone service provider based on the amount of commission the facility would receive is a matter of state law.  The court acknowledges that Plaintiffs seek both monetary and injunctive relief based on the difference between the filed rates based on current service agreements and the filed rates which could result from amended service agreements. However, I interpret this as merely a method of computing damages, not a challenge to the rates as filed.  Recovery itself is not based on a finding of unreasonableness of the filed rates. Recovery is premised on a finding of unlawful contracts and negotiation.  It is conceivable that a court could find that the correctional facilities unlawfully elected to enter into service agreements with providers that offered the largest commissions, in violation of state law.  However, it does not follow conclusively that the invalidation of a commission would result in lowered filed rates.   Accordingly, I remand this case to state court.

## II.    Motion for Fees and Costs

Plaintiffs request that they be awarded the attorney fees and costs incurred as a result of this removal to federal court. *See* 28 U.S.C. § 1447(c).  The decision to award attorneys fees and costs under §1447( c) is discretionary with the court.  *See Suder v. BlueCircle, Inc.*, 116 F. 3d 1351, 1352 (10th Cir. 1997).  The key factor in determining whether attorneys fees and costs should be awarded

---

*Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)(a defendant's assertion of a defense based on federal law, such as the federal preemption of the state law on which a plaintiff's claim is based, is an insufficient basis for removal).

is the propriety of the removal.  *See id.*

I find no evidence that Defendants have attempted to remove these actions in bad faith.  The issues raised in Defendants' Notice of Removal and Plaintiffs' Motion to Remand are complex and have found different conclusions in the law.  Thus, Defendants raised a substantial question regarding the existence of federal jurisdiction.  Therefore, the court declines to exercise its discretion to award fees in this case.

Wherefore,

**IT IS ORDERED** that Plaintiffs' Motion to Remand and Request for Attorney's Fees, filed June 16, 2000 *(Doc. 47)* is granted in part and denied in part.

**IT IS FURTHER ORDERED** that this case is hereby remanded to the First Judicial District Court (Rio Arriba) for the State of New Mexico.

**IT IS FURTHER ORDERED** that Plaintiff's motion for attorneys' fees is denied.

**IT IS FINALLY ORDERED** that Defendants' outstanding motions to dismiss are hereby denied as moot.

DATED July 17, 2001.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

11

Attorneys for Plaintiffs:

       Michael R. Comeau, Esq.
       Grey Handy, Esq.
       Comeau, Maldegen, Templeman & Indall, LLP
       Santa Fe, New Mexico

       Robert Rothstein, Esq.
       Mark Donatelli, Esq.
       Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Shoenburg
       Santa Fe, New Mexico

       Bruce Throne
       Santa Fe, New Mexico

Attorney for Wackenhut Corrections Corporation,
Joseph Williams and Erasmo Bravo:

       Rex Throckmorton, Esq.
       Rodey, Dickason, Sloan , Akin & Robb, PA
       Albuquerque, New Mexico

Attorneys for Corrections Corporation of America,
William Snodgrass, Donald Dorsey and Thomas Newton:

       Gail Gottlieb, Esq.
       Sutin, Thayer & Browne, PC
       Albuquerque, New Mexico

       Dan Struck, Esq.
       Jones, Skelton & Hochuli
       Phoenix, Arizona

Attorneys for Cornell Corrections of Texas, Inc.:

       Carl J. Butkus, Esq.
       Butkus & Reimer, PC
       Albuquerque, New Mexico

Attorneys for Correctional Service Corporation:

       William C. Marchiondo, Esq.
       Marchiondo & Vigil
       Albuquerque, New Mexico

Attorneys for Evercom Systems, Inc.:

       Patricia Salazar Ives, Esq.
       Joseph Van R. Clarke, Esq.

Robert D. Sckalor, Esq.
Simons, Cuddy & Friedman, LLP
Santa Fe, New Mexico

Jay M. Vogelson, Esq.
Van J. Hooker, Esq.
Stutzman & Bromberg, PC
Dallas, Texas